RECEIVED
NOV 2 2022
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

FILED
NOV 2 2022
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

# IN THE DISTRICT COURT OF THE UNITED STATES
## WESTERN DISTRICT OF TEXAS EN BANC PANEL

THE STATE OF TEXAS, ex rel;
Estates of Frank A. Wallace & Lisa F. Wallace,
By Successor Trustee, Stephen P. Wallace, and
All Texas Trust Estate Family's similarly situated,
     Amending and Adding,
*Estate of Lorice T. Wallace,
   RICO CLASS ACTION PLAINTIFFS,

CASE #: 1:22-CV-01079
Hon. Chief Judge Orlando L. Garcia
And the EN BANC PANEL

vs.

Jamie Dimon, JP Morgan Private Bank, James Inhofe,
Jack Kirkpatrick, Kevin Stitt, et al., already of RECORD,
     Amending and Adding,
 *Trust Company of Oklahoma; Thomas Wilkens,
Robert Lorton, Sr., James Milton, James Weger,
Ronald J. Saffa, Morrel Law PLLC, and John & Jane Does
Not yet named,   RICO CLASS ACTION DEFENDANTS.

## 1ST AMENDED RICO CLASS ACTION COMPLAINT

1 That former JP Morgan Private Bank Senior V.P., MARK CLEMONS, based in JPM PB in Dallas, Texas, made multiple trips to Tulsa, OK., to meet with the last remaining Co-Trustees, LORICE T. WALLACE and Stephen P. Wallace, to assure Co-Trustees that JP Morgan Private Bank would correct the blatant "Misfeasance & Malfeasance being perpetrated under color of Fiduciary" by the TRUST COMPANY of OKLAHOMA, it's Owner, ROBERT LORTON, SR., it's President, THOMAS WILKENS, and their lawyer in conspiracy, JAMES MILTON; (see May 24,'04 Edson L. Bridges II Letter & Texas Supreme Court Complaints)

2 That JP Morgan Private Bank VP, **JOHN THIBIDEAUX**, came to Tulsa multiple times to TESTIFY & FILE FALSE CLAIM DEEDS to the Wallace Family **"250 Acres, and the 12 Oil & Gas Wells producing in the famous GLENPOOL RESERVOIR"**, still producing today for CONOCO/PHILLIPS @ [5th Cir. Case #:2007cr11283;

3 That JAMES MILTON and RONALD SAFFA confessed JURISDICTION in Texas by enter Appearance in both of the 5th Circuit CASES of RECORD regarding the relentless attempts to **_SAVE LISA FROM HER FAILURE TO THRIVE & DEATH_**;

4 That Co-Victim & RELATOR, Stephen P. Wallace urges **Hon. Orlando L. Garcia** to formally enter Wallace into a **Witness Protection Program**, which expenses to be Advance by the State of Texas, and reimbursed @ conclusion of RICO Cases, per ORDER of Hon. Orlando L. Garcia;

5 That TIMING IS PAST CRITICAL for Wallace's PROTECTION from RICO KLAN.

**NOVEMBER 1st, 2022**
Filed via USPS Express Mail
With Signature Confirmation

Respectfully submitted,

*[signature]*
Stephen P. Wallace
11305 Quail Creek Road
OKC, OK.  73120
(331) 575-2341

## CERTIFICATE of SERVICE

All Interested Parties will be served via PDF   *[signature]*

**BRIDGES INVESTMENT COUNSEL, INC.**
8401 WEST DODGE ROAD, SUITE 256
OMAHA, NEBRASKA 68114-3493

May 24, 2004

Mr. William B. Harrison, Jr.
Chairman and Chief Executive Officer
J. P. Morgan Chase & Co.
270 Park Avenue
New York, NY 10017

Dear Mr. Harrison:

    This letter is written on behalf of Stephen P. Wallace of Tulsa, Oklahoma. I am an investment adviser with residence and business in Omaha, Nebraska, where I have lived and practiced for 42 years. Our Firm is the continuation to the 208th registration with the Securities and Exchange Commission. There are approximately 60,000 registered investment advisers in the nation. I employ about 27 persons, and the Firm manages around $2 billion in client and trust customer assets. During my business career, I have started and successfully nurtured the first mutual fund organized under the laws of the State of Nebraska, a transfer agency business, and a state chartered trust company. These entities have business relationships in 27 states and several foreign countries. My secondary education was at Deerfield Academy in Deerfield, Massachusetts. I graduated Summa Cum Laude from the University of Nebraska in June, 1954. While I was a student, I received a Phi Beta Kappa Key and other honors. I received an MBA from Harvard University in June, 1956, and I continued on the faculty at Harvard Business School as a research assistant to George P. Baker and James J. Hill, Professor of Transportation, who later became the Dean of the School and, subsequently, the Trustee in bankruptcy for the Penn Central Railroad.

    Mr. Wallace has sent you a letter dated May 3, 2004, in which he wishes your attention regarding his family affairs with the Trust Division of Bank One, N.A., located in Tulsa. Mr. Wallace wished me to indicate to you that a private trust company under our care would be willing to act as a successor to Bank One, N.A. and Union Bank and Trust Company in Lincoln, Nebraska, as a potential receiver for assets held either at the Trust Company of Oklahoma on behalf of his mother or the Frank A. Wallace Revocable Trust dated December 27, 1974. The major asset inside the Lorice T. Wallace Revocable Trust is the Lorice T. Wallace Family Limited Partnership. This letter serves to express our agreement to serve in the successor capacities desired by Mr. Wallace and his sister Roma Jage.

FROM :

MAY-24-04 19:47 FROM:BRIDGES INVESTMENT        ID:4023078817              :46PM P18
                                                                          PAGE   5/6

Mr. William B. Harrison, Jr.                    2                         May 24, 2004

In my 46 years as an investment counselor and 12 years as the manager of Provident Trust Company, I have never seen a situation that deserves someone somewhere to stand up and find out the facts and provide appropriate relief to family members as principal and income beneficiaries than the situation faced by the family of Frank A. Wallace, deceased, and Lorice T. Wallace, deceased.

Bank One has a supervising officer for trust departments in Oklahoma and Texas by the name of Mark Clemons. This individual is someone who thought there was sufficient conflict of interest in Tulsa to move the administration of the Frank A. Wallace Trust to Dallas, Texas, in early 2003. This individual is competent and, I believe, compassionate. He described how difficult cases were handled within the Bank One system when protective administrative actions should occur. For some reason, his thinking or voice has been lost, and an overbearing and hurtful condition continues for the two family members referenced earlier in this letter. I urge you to respond to Mr. Wallace, and even though your Bank is not yet merged with Bank One, you should use your influence with Mr. Dimon and others to at least find a responsive way to address the concerns and ways to assist principal beneficiaries of his father's trust.

Thank you for your consideration in this matter on behalf of the Wallace family. For my part, our organization or its investment adviser has probably donated $10,000 to $25,000 in administrative time to set up the Wallace relationships. We have also paid for independent attorneys to see whether or not there were merits that should be considered and whether or not our organization should accept the Wallace trusts. Our institution refuses to participate in any litigation. In this matter, my interest, and that of our personnel, are only desirous of finding ways to unify family members and to be peacemakers.

Sincerely,

Edson L. Bridges II, CFA
President

ELB/ckjs

*IN THE DISTRICT COURT FOR TARRANT COUNTY*

*017-209685-05*

FILED IN SUPREME COURT OF TEXAS
FEB - 7 2008
ANDREW WEBER, Clerk
BY_____ Deputy

~~IN THE UNITED STATES DISTRICT COURT OF THE NORTHERN DISTRICT OF TEXAS FT. WORTH DIVISION~~

LISA F. WALLACE, a developmentally disabled person, by and through her next friend, Stephen P. Wallace; Stephen P. Wallace, individually and all those similarly situated, )
)
)
)
) 
Pauperis/Pro Se Plaintiffs, )
)
vs. )   CASE NO. 06-0102
)
James Dimon, individually and in his official )   JURY TRIAL DEMANDED
capacity; William Harrison, individually and in his )
official capacity; Bank One, N.A. (Ft. Worth, Tx); )
Mark Clemons, individually and in his official )
capacity; and Doug Sherry, individually and in his )
official capacity, )
)
Defendants. )

ORIGINAL **COMPLAINT/PETITION FOR ACCOUNTING AND OTHER RELIEF**

## I. JURISDICTION

This action arises out of Breach of Contract/Breach of Trust & Fiduciary between citizens of different states pursuant to **DIVERSITY**. Plaintiffs seek to recover compensatory and punitive damages sustained, as a result of Defendants' conduct, along with the costs of this suit, interest and reasonable attorney/forensic fees. This Court's jurisdiction is invoked under Diversity.

## II. PARTIES

1. Plaintiffs, Lisa F. Wallace and Stephen P. Wallace, are presently and at all times set forth in this complaint as residents of the State of Oklahoma.

2. James Dimon was a resident of Illinois during the alleged misconduct but is now a resident of New York.

3. William Harrison is a resident of New York.


EXHIBIT D

FILED
IN SUPREME COURT
OF TEXAS

FEB - 7 2006

ANDREW WEBER, Clerk
BY_____ Deputy

No. _____

# IN THE SUPREME COURT OF TEXAS

Lisa F. Wallace, a developmentally disabled person,
by and through her next friend, Stephen P. Wallace;
Stephen P. Wallace, individually and all those similarly situated,

Plaintiffs/Appellants/Petitioners

v.

James Dimon, et al.
Defendants/Appellees/Respondents

---

**EMERGENCY PETITION FOR REVIEW
OF
APPEAL NO. 02-05-00197-CV**

**IN THE
COURT OF APPEALS**

**FOR THE SECOND DISTRICT OF TEXAS
FT. WORTH (TARRANT COUNTY), TEXAS**

---

**PETITIONERS RULE 53.1 FOR REVIEW**

---

February 4, 2006

Stephen P. Wallace
6528 E. 101st D-1, #304
Tulsa, Oklahoma 74133
(918) 694-1870

JUN. 14. 2006  1:31PM    2ND COURT OF APPEALS                    NO. 004    P. 1

IN SUPREME COURT
OF TEXAS                    06-0540
JUL 03 2006
        RECEIVED
AN   COURT OF APPEALS
BY   SECOND DISTRICT
        Deputy
                           COURT OF APPEALS
'06 JUN 14 P1:20    SECOND DISTRICT OF TEXAS
                             STATE OF TEXAS
FORT WORTH TEXAS

LISA F. WALLACE, a developmentally )
disabled person, by and through her next friend, )
Stephen P. Wallace; Stephen P. Wallace, )
individually and all those similarly situated, )
                                                )
        Pauperis/Pro Se Plaintiffs,             )
                                                )
vs.                                             )   Court of Appeals
                                                )   Case # 02-05-00197-CV
                                                )
James Dimon, individually and in his official   )   Trial Court
capacity; William Harrison, individually and in his )   Case # 17-209685-05
official capacity; Bank One, N.A. (Ft. Worth, Tx); )
Mark Clemons, individually and in his official  )
capacity; and Doug Sherry, individually and in his )
official capacity,                              )
                                                )
        Defendants.                             )

## REQUEST FOR THE COURT TO TAKE JUDICIAL NOTICE OF MARCH 31, 2006 AMENDED FILING IN LOWER CASE AND EMERGENCY MOTION FOR CLARIFICATION ON APPELLEES DEFAULT

COMES NOW, Pauperis/pro se Appellants, who request this Court to take judicial notice of amended filing of lower case on March 31, 2006 after receiving this Court's REVERSED/RENDERED ORDER and move the Court for clarification state as follows:

1) Within 10 days of receipt of the REVERSED/RENDERED ORDER stating that the case was dismissed without prejudice, (Exhibit I), Appellants' filed their First Amendment ORIGINAL

"1"



**IN THE DISTRICT COURT IN AND FOR TULSA COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| IN THE MATTER OF THE TRUST OF: ) | |
| CAROLYN S. BURFORD; (PETITION OF ) | |
| JPMORGAN CHASE BANK, N.A., ) | |
| successor in interest to ) | |
| BANK ONE TRUST COMPANY, N.A. FOR ) | Case No. PT-2006-013 |
| INSTRUCTIONS AND CONSTRUCTION OF ) | |
| TRUST) ) | Judge Linda G. Morrissey |

[Stamp: FILED OCT - 9 2012  SALLY HOWE SMITH, COURT CLERK STATE OF OKLA. TULSA COUNTY]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE comes before the Court for decision following a non-jury trial. The Petitioner, J.P. Morgan Chase Bank, N.A. was represented by James Weger, Adam Strange and Robert Peters. Respondent, Ann Fletcher, was represented by Erin Donovan. Respondent, Oklahoma Annual Conference of the United Methodist Church, was represented by John Imel. Interested Party, Rufus Griscom, was represented by R. Casey Cooper. Interested Party, Marianne Borgono, was represented by Joseph Farris and Jeremy Ward. Trustee, the Trust Company of Oklahoma, was represented by James Milton. After considering all of the evidence, briefs and authority presented, the Court, being fully advised in the premises, hereby FINDS and ORDERS as follows:

### I.     FACTUAL AND PROCEDURAL HISTORY

#### A. History and Terms of the Carolyn S. Burford Trust

The Carolyn S. Burford Trust (the Trust) was created by Grantors, W.G. Skelly and Gertrude Skelly (Grantors), on October 11, 1955. The Trust was created to benefit the Grantors' daughter, Carolyn Skelly Burford and the Grantors' granddaughter, Ann Burford (now Ann Fletcher). The Trust provides for two co-trustees, one corporate and one individual. The Trust is

Fletcher did not breach her fiduciary duties by failing to notify the remainder beneficiaries that the Trust was entering into VPFs. Fletcher, due to her inability to understand the VPFs, could not have adequately informed the remainder beneficiaries regarding the transactions.

10. The Bank's accounting does not meet the standards for a corporate trustee's accounting of its administration of a trust. The Bank is unable to produce records of the trust administration and blames the absence of such records from October 1, 1955 through January 1, 1998 on its inability to retrieve documents from a broken imaging system formerly used by the Bank.

### C. Damages

The Trust suffered substantial financial decline directly caused by the numerous breaches of fiduciary duty, in particular, but not limited to the ill-advised investments in the VPFs and the fees and costs associated with them, and the further breaches set out above. The Bank breached numerous fiduciary duties it owed as trustee because, among other things, (a) it negligently and recklessly subjected the XOM shares to the VPFs, effectively selling 167,402 shares, and (b) it negligently sold 20,000 XOM shares on July 21, 1999 to purchase other assets for the Trust.

The proper measure of damages is the loss to the Trust caused by the inappropriate investments in VPFs. 60 O.S. § 175.57(C) specifically authorizes the Court to order that the Bank pay "the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred, or if greater, the profit that the trustee made by reason of the breach." Here, the greater of the two amounts is that required to restore the value of the Trust property; accordingly, the Bank is ordered to restore to the Trust corpus the shares of XOM stock lost under the VPF investment strategy. Therefore, 220,122 shares of XOM should be restored to the Trust. The value of these shares on May 19, 2011 was $18,122,644.26 and judgment is entered for the Respondent Trust in that amount.



27

This Court has authority to impose a variety of remedies, including "any other appropriate remedy." 60 O.S. § 175.57(B)(9). Title 60 O.S. § 175.57(D) provides that this Court, in its discretion, may award costs and expenses, including reasonable attorney's fees, to be paid by another party. The Bank shall be surcharged with the reasonable attorney's fees incurred by the Trust and the beneficiaries because of its egregious conduct.

Neither Briggs nor Griscom has been paid for their service as co-trustee. Griscom has not been paid for work he has done as a consultant or advisor (or trustee). Griscom provided extraordinary services that resulted in the discovery of significant mistakes made by the Bank in the administration of the Trust. Likewise, Briggs made extraordinary but unsuccessful efforts to hold the Bank accountable as a responsible corporate trustee. Griscom and Briggs are entitled to reimbursement as a surcharge against the Bank in an amount that this Court deems appropriate for their extraordinary services to the Trust, and which shall be determined at a future hearing to be set upon application.

The evidence in this case satisfies the elements which the Legislature has prescribed for the imposition of punitive damages because of the Bank's reckless and/or intentional disregard for the rights of the beneficiaries. As noted above, this Court has authority to impose a variety of remedies, including "any other appropriate remedy." 60 O.S. § 175.57(B)(9). Punitive damages would be such an appropriate remedy, and the Court is guided by 23 O.S. § 9.1, which governs punitive damage awards in "all civil actions." 23 O.S. § 9.1(G). *See also Robinson v. Kirbie*, 1990 OK CIV APP 45, ¶9, 793 P.2d 315, 318-19 (citing 23 O.S. § 9.1 as support for punitive damages award against trustee found to have charged unreasonable trustee fees, embezzled and/or converted trust assets to his own use, and provided deliberate misinformation to beneficiaries). Reviewing the conduct of the Bank in light of the factors set forth in 23 O.S. § 9.1, it is clear that an award of punitive damages is appropriate:

- The misconduct by the Bank is serious and shows a disregard for customers of the Bank.

- The Bank profited by the misconduct described herein in an amount of up to $2 million dollars, plus management fees.

- The misconduct continued for years and was concealed from both the income and remainder beneficiaries until Griscom investigated.

- The Bank was fully aware—or recklessly failed to be aware—that the conduct alleged was prejudicial to the Trust and the beneficiaries while beneficial to it and its employees.

- Upon discovery of the misconduct, the Bank did restore some excessive fees and improperly distributed income, but has failed to restore the loss to the Trust for the VPFs.

- A number of employees of the Bank were involved in the sale of the VPFs to the Trust due to the Bank's incentive structure.

The Court finds that the Bank was fully cognizant of its fiduciary obligation and the requirements attendant thereto under Oklahoma law. The Bank disregarded important elements of that obligation by promoting risky financial transactions to Fletcher, the individual co-trustee, without insuring that she was either capable of meaningful analysis or had independent financial counsel prior to agreeing to the transactions skewed substantially in favor of the Bank. Following decades of abiding by the Retention Provision in the Trust instrument, and previous individual trustees' refusal to place the stock assets at risk in order to diversify the Trust, the Bank recruited Fletcher to serve as the individual trustee by enticing her with substantially increased monthly income from approximately $25,000 per month to $33,000 per month. By involving Fletcher, who was not only self-interested but of obvious diminished capacity, in the conversion of Trust assets into payments that were described as income, the Court can only conclude the Bank employees, both in the trust department and the investment divisions, acted in concert to utilize the Trust assets to benefit the Bank and in willful disregard of the best interest of the Trust. Individuals, acting under the auspices of the Bank and within the scope of their duties, disregarded the clear and

29

unequivocal expression by Mr. & Mrs. Skelly who placed their confidence in a corporate trustee. In the pursuit of monetary gain, both Bank employees individually and the Bank as a corporation, engaged in a pattern of conduct calculated and designed to primarily enrich the Bank and its employees without regard to the deleterious effects of its conduct on the Trust and the remaindermen of the Trust. Imprudent decisions were made and irresponsible actions were taken by the Bank that demonstrated a reckless use of Trust assets to generate substantial revenue to the Bank of well over $1 million and unprecedented bonuses to the Bank employees connected to managing the assets of the Trust amounting to tens of thousands of dollars.

The Court finds that beyond simply restoring the trust to the position in which it should have been maintained, it is appropriate to assess punitive damages for the sake of example and by way of punishing the Bank for its conduct. The breaches of fiduciary duty by the Bank set forth herein qualify for punitive damages because the Bank has engaged in conduct that was in "reckless disregard of the rights of others," to wit, the beneficiaries, and in particular, the remaindermen who suffered substantially because of the diminution in Trust assets. 23 O. S. § 9.1(B). The Court finds, by clear and convincing evidence, that the Bank has been guilty of reckless disregard for the rights of others. Punitive damages to be awarded pursuant to 23 O. S. § 9.1(B) to the Respondent Trust shall be determined following a hearing limited to "the financial condition" of the Bank. 23 O. S. § 9.1(A)(7). The Court has heard evidence relating to factors 1 through 6 of § 9.1(A) and will hear evidence relating to the 7th factor which is the Bank's financial condition at a hearing on December 11, 2012 at 9:30 a.m.

## CONCLUSION

The evidence in this case overwhelmingly demonstrates the Bank's grossly negligent and reckless administration of the Trust to the detriment of the beneficiaries. The Bank breached a series of fiduciary duties, including investing in VPFs, overpaying the income beneficiary,

30

engaging in self-dealing and failing to properly account for its actions. These actions have caused damage to the Trust and to the interests of the beneficiaries. Accordingly, judgment is entered for the Respondents on their counterclaims and damages are awarded as set forth above.

IT IS SO ORDERED this 9th day of October, 2012.

Linda G. Morrissey
Judge of the District Court

AFFIDAVIT OF MAILING

I, Sally Howe Smith, Court Clerk of Tulsa County, hereby certify that on the 10 day of October, 2012, a true and correct copy of the foregoing Order was mailed to each of the attorneys listed below and a true and correct copy of the foregoing Order was filed in the foregoing case:

Erin Donovan
1921 S Boston Ave
Tulsa, OK 74119

Joseph R Farris
2 West 2nd St, Ste 900
Tulsa, OK 74103

R. Scott Johnston
195 Broadway, 24th Floor
New York, NY 10007

Bernie Jackvony
170 Westminster St, Ste 201
Providence, RI 02903

R. Casey Cooper
401 S Boston Ave, Ste 3300
Tulsa, OK 74103

John M Imel
401 S Boston Ave, Ste 1100
Tulsa, OK 74103

James E. Weger
Adam J. Strange
15 E 5th St, Ste 3800
Tulsa, OK 74103

SALLY HOWE SMITH, COURT CLERK

*Kim O'Brien*
Kim O'Brien, Deputy Court Clerk

32





**PRIORITY MAIL XPRESS**

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

FROM: (PLEASE PRINT)  PHONE ( )
Stephen Wallace
11305 Quail Creek Road
Oklahoma City, Ok
73120

TO: (PLEASE PRINT)  PHONE (512) 916-5896
US Court Clerk
501 West Fifth Street #1100
Austin, TX
78701-




**PRIORITY MAIL EXPRESS**

US POSTAGE PAID
$27.90
Origin: 75201
11/01/22
482080201-07
0 Lb 8.10 Oz
1007
Retail

E

STEPHEN WALLACE
11305 QUAIL CREEK RD
OKLAHOMA CITY OK 73120-5219
(331) 575-2341

SIGNATURE REQUIRED

SCHEDULED DELIVERY DAY: 11/02/22 08:00 PM   C006

SHIP TO:
(512) 916-5896
US COURT CLERK
501 W 5TH ST
STE 1100
AUSTIN TX 78701-3812

USPS SIGNATURE® TRACKING #

9581 7102 4061 2305 4451 64





